1:23-cr-00644
Judge Edmond E. Chang
Magsitrate Judge Jeffrey Cole
RANDOM/ CAT 3

**FILED**

DEC 1 8 2023  GMM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. |
| v. | Violations: Title 18, United States Code, Sections 1343 and 1957 |
| ALEXIA SPEARS | **UNDER SEAL** |

## COUNTS ONE THROUGH TWO

The SPECIAL NOVEMBER 2023 GRAND JURY charges that:

1.     At times material to this indictment:

### The Small Business Administration

a.     The U.S. Small Business Administration ("SBA") was a United States government agency that provided economic support to small businesses.

### The Paycheck Protection Program

b.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

c.     One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietors for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

d.      To obtain a PPP loan, a business, sole proprietor, or self-employed individual submitted a PPP loan application, which was signed by the applicant or an authorized representative of the business.  The PPP loan application required the applicants to acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business, proprietorship, or individual. In the application, businesses, sole proprietors, and self-employed individuals were required to provide, among other things, their number of employees, average monthly payroll, and gross income.  This figure was used to calculate the applicant's eligibility and the amount of money the business could receive under the PPP.  Applicants were also required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations.

e.      PPP loan proceeds were required to be used by the business, sole proprietorship, or self-employed individual for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the SBA if the business, sole proprietorship, or self-employed individual spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

f.      To gain access to funds through the PPP, businesses, sole proprietorships, and self-employed individuals applied to financial institutions

2

participating in the PPP and received the loans directly from those financial institutions as the lender.

g.    Participating lenders required applicants for PPP loans to provide truthful information about the sole proprietorship, self-employed individual, or business and its owner, including truthful information about the applicant's payroll, income, operating expenses, and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans.

### *The Economic Injury Disaster Loan Program*

h.    Another source of relief provided by the CARES Act and other pandemic-relief legislation was the expansion of the Economic Injury Disaster Loan ("EIDL") Program, which provided loan assistance (including advances of up to $10,000) for businesses with 500 or fewer employees and other eligible entities. The EIDL Program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

i.    To gain access to funds through the EIDL Program, small businesses applied through the SBA via an online portal and application. As part of the EIDL application process, the SBA required applicants to submit truthful information about the applying entity, its owner, and its financial condition prior to the COVID-19 pandemic. This information included the entity's number of employees as of January 31, 2020; the entity's gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020; and the entity's type of business (i.e., a

business, an agricultural business, a sole proprietorship, a cooperative, among others); the date on which the business opened; and the date on which the current owner assumed ownership of the entity. Applicants were required to electronically certify that the information provided in the application was true and correct and were warned that a false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

       j.    EIDL funds were issued to small-business applicants directly from the United States Treasury.

       k.    EIDL Advance was a grant program offered together with the EIDL Program. EIDL Advance was designed to provide emergency economic relief to businesses that were experiencing a temporary loss of revenue as a result of the COVID-19 pandemic. The applicant could request consideration for an EIDL advance in an application for an EIDL loan. The amount of the advance issued to the small-business applicant was determined by the number of employees indicated on the EIDL application, at $1,000 per employee, up to $10,000. If an EIDL advance was issued, the advance did not need to be repaid.

       l.    If an EIDL application was approved by the SBA, the amount of the EIDL loan was determined in part based on the statements in the EIDL application about the entity's revenues and cost of goods sold for the 12 months prior to January 31, 2020.

m.     EIDL Program funds could be used to pay for the ordinary operating expenses and debts of the entity, including payroll, sick leave, production costs, utilities, rent, mortgage payments, continuation of health care benefits, and fixed debt payments.

### Lender

n.     Lender A was a financial technology company which processed PPP applications and funded PPP loans to approved borrowers. Lender A maintained computer servers that were located outside of Illinois.

### The Scheme to Defraud

2.     Beginning in or around June 2020 and continuing through in or around June 2021, in the Northern District of Illinois, and elsewhere,

ALEXIA SPEARS,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for PPP and EIDL funds, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3.     It was part of the scheme that SPEARS, for the purpose of fraudulently obtaining approximately $750,732 in PPP and EIDL funds, submitted approximately nine applications for loans and advances under the PPP and EIDL Programs, on behalf of businesses and entities purportedly owned and operated by SPEARS, including Company A and various entities operating under the name "Alexia Spears"

(together, the "Fictitious Entities"); which applications contained materially false statements and misrepresentations concerning, among other things, the purported entities' number of employees, gross revenues, payroll, cost of goods sold, operating expenses, type of business, and existence as companies with ongoing operations.

### *The PPP Loan*

4.      It was further part of the scheme that SPEARS prepared, and submitted to Lender A, a PPP loan application, in which SPEARS falsely and fraudulently represented that she was the sole proprietor of a business, established in 2017, that had earned approximately $102,765 in gross income in 2019, and that all PPP loan proceeds would be used only for business related purposes. SPEARS knew at the time that she was not a sole proprietor of a business that had earned $102,765 in gross income in 2019, and she intended to use the loan funds for her personal use and benefit.

5.      It was further part of the scheme that, to substantiate the claimed income of Alexia Spears, SPEARS prepared, and submitted to Lender A, a copy of a false IRS Form 1040 Schedule C that fraudulently represented that her purported sole proprietorship had earned $102,765 in 2019. SPEARS knew at the time that neither she nor her purported sole proprietorship had earned gross income in that amount in 2019.

6.      It was further part of the scheme that SPEARS prepared, and submitted to Lender A, a copy of a falsified statement of a bank account held in her name, which

statement falsely and fraudulently overinflated the amount of money she held in the bank account and the dates on which that money was held in the account. SPEARS knew at the time that her bank account did not hold the amount of money documented in the falsified bank statement and that the bank account was not open on the dates represented in the statement.

7.      It was further part of the scheme that, through the submission of the false and fraudulent PPP loan application, SPEARS caused Lender A to disburse approximately $20,832 in PPP loan proceeds into a bank account that SPEARS controlled.

8.      It was further part of the scheme that SPEARS used the PPP funds that Lender A disbursed based on the fraudulent PPP application to make cash withdrawals and to purchase goods and services, including clothing and airline tickets, all for SPEARS' personal use and benefit.

### *The EIDL Loan*

9.      It was further part of the scheme that SPEARS prepared, and submitted to the SBA, numerous applications for EIDL loans and advances on behalf of several of the Fictitious Entities, including Company A and various entities purportedly doing business under her name; in which applications SPEARS made false statements regarding the dates on which those entities opened for business, the entities' gross revenues and costs of goods sold for the 12 months prior to January 31, 2020, and the number of employees employed by those entities as of January 31, 2020.

SPEARS knew at the time that the Fictitious Entities were not operating companies, had no employees, and did not have the revenues or cost of goods stated in the applications.

10.     It was further part of the scheme that, through the submission of the false and fraudulent EIDL loan applications, SPEARS caused the SBA to disburse approximately $109,900 in in EIDL loan proceeds and advances into a bank account that she controlled, and she attempted to fraudulently obtain an additional $620,000 in EIDL proceeds.

11.     It was further part of the scheme that SPEARS used the EIDL funds obtained through her submission of fraudulent EIDL applications to make cash withdrawals and to purchase goods and services, including a 2021 Mercedes Benz truck, Model GLA250W4, all for SPEARS' personal use and benefit.

12.     It was further part of the scheme that SPEARS misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

13.     On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, SPEARS, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire

communication in interstate commerce certain writings, signs, and signals, listed

below, each such writing, sign, and signal constituting a separate count:

| Count | Date | Writing, Sign, and Signal |
|-------|------|---------------------------|
| One | June 15, 2020 | an internet transmission of an EIDL loan application on behalf of Company A, through an SBA server located outside of Illinois |
| Two | March 23, 2021 | an internet transmission of a PPP loan application on behalf of "Alexia Spears," to Lender A's computer servers located outside of Illinois |

In violation of Title 18, United States Code, Section 1343.

9

## **COUNT THREE**

The SPECIAL NOVEMBER 2023 GRAND JURY further alleges:

On or about August 6, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

ALEXIA SPEARS,

defendant herein, knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, namely, the purchase of a 2021 Mercedes Benz truck, Model GLA250W4, from Mercedes-Benz of Orland Park, that was derived from specified unlawful activity, namely, wire fraud;

In violation of Title 18, United States Code, Section 1957.

10

## FORFEITURE ALLEGATION

The SPECIAL NOVEMBER 2023 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1957, as set forth in this Indictment, defendant shall forfeit to the United States of America any property involved in such offense, and any property traceable to such property, as provided in Title 18, United States Code, Section 982(a)(1).

3.      The property to be forfeited includes, but is not limited to:

a.      a personal money judgment in an amount equal to the proceeds derived from the offenses in violation of Title 18, United States Code, Section 1343, estimated to be approximately $130,732; and

b.      a 2021 Mercedes Benz Truck, Model GLA250W4.

4.      If any of the property described above, as a result of any act or omission by a defendant:  cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the

United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____

ACTING UNITED STATES ATTORNEY

12